So. Engineering & Electric Co., et al. *v.* Chester, et al.

No. 39795 December 12, 1955 83 So. 2d 811

January 16, 1956 84 So. 2d 535

*Crisler, Crisler & Bowling,* Jackson, for appellants.

*Travis & Moore,* Jackson, for appellees.

McGEHEE, C. J.

This is one of the five appeals under the Mississippi Workmen's Compensation Act out of a total of eleven appeals, both civil and criminal, submitted to the Court on November 14, 1955. On the question of liability it involves solely the question of whether or not the employee's work for the Southern Engineering & Electric

Company aggravated, contributed to and precipitated his death on December 9, 1953, due to a pre-existing heart ailment. There is no conflict in the testimony that the employee, James D. Chester, had been suffering from a heart ailment for sometime prior to the date of his death, and that he suffered the attack of coronary thrombosis while about the duties of his employment. He had been about his work nearly an hour on that morning when he climbed onto a scaffold slightly over eleven feet high either by means of a ladder or by climbing from one cleat or crosspiece to the other from the floor to the top of the scaffold, one or two of the witnesses having testified that they did not think the ladder was then available, whereas another witness thought that he ascended to the top of the scaffold by using a ladder. At any rate, the pain in his chest became so severe within about ten minutes after he reached the top of the scaffold and began his work of installing an electric wire in the ceiling of the building that it was necessary for him to come off the scaffold to the floor where he was administered unto until he could be carried to the hospital, where he admittedly died within twenty or thirty minutes from coronary thrombosis.

The employee lived at Yazoo City but went to and from Indianola where the work in which he was then engaged was being performed. On that morning while enroute to Indianola, accompanied by another employee in an automobile, he complained of pain in his chest and stated that he wasn't feeling well at all and that he perhaps should not have undertaken to work that day. On the day before, he had worked elsewhere due to the fact that the employees of the Southern Engineering and Electric Company were having a holiday and a picnic. He complained of ''not feeling too good'' on December 8, after having climbed a ladder to the attic of a building where his work was being done on that day, and he had also complained of pains in his chest on

former occasions according to the medical history of the case as set forth in the record.

There is no material conflict in the testimony of the lay-witnesses who testified before the attorney-referee, and the medical testimony is summarized in the appellants "Statement of Facts" in the forefront of their brief as follows: "Claimants called as medical witnesses, Dr. Edward Corbin, deceased's family physician, who was a general practitioner, and Dr. Thaddeus Le Becki, who purported to be a specialist in cardio-vascular diseases. Each testified the likely cause of death was 'coronary thrombosis' and each gave his opinion that the work Chester was doing aggravated or precipitated his attack. Appellants called as their medical witnesses two well recognized specialists in cardio-vascular work, Dr. D. T. Van Landingham and Dr. William H. Rosenblatt. Each agreed the likely cause of death was 'coronary thrombosis' and each gave positive testimony that there was no causal connection whatsoever between the work and the attack from which the deceased died.''

The lay-witnesses testified to the prior complaints of the employee in regard to the pains in his chest, and some of them testified as to the facts and circumstances in connection with what happened on the morning of his death. And it is true that the medical witnesses testified, two one way and two the other, as to whether or not there was causal connection between the work and the death of the employee, in response to hypothetical questions embodying the history of the case. The attorney-referee, the commission and the circuit court adopted the testimony of Drs. Corbin and Le Becki to the effect that the work of the employee aggravated, contributed to and precipitated the attack of coronary thrombosis from which the employee died. Such being the case, the question of liability is well-settled by the following recent cases of this Court to wit: Avery Body

Company, et al. v. Hall, 79 So. 2d 453; Cowart v. Pearl River Tung Company, 218 Miss. 472, 67 So. 2d 356; East v. Pigford Brothers Construction Company, et al., 219 Miss. 121, 68 So. 2d 294; Hardin's Bakeries, Inc., et al. v. Ranager, 217 Miss. 463, 64 So. 2d 705; Ingalls Shipbuilding Corp., et al. v. Byrd, 215 Miss. 234, 60 So. 2d 645; La Dew, et al. v. La Borde, 216 Miss. 598, 63 So. 2d. 56; Mississippi Products, Inc. v. Gordy, 80 So. 2d. 793; Pearson v. Dixie Electric Power Association, 70 So. 2d 6; Railway Express Agency, Inc. v. Hollingsworth, et al., 74 So. 2d 754; Thornbrough Well Servicing Company, et al. v. Brown, 78 So. 2d 159; Stanley v. McLendon, et al., 70 So. 2d 323; Sunnyland Contracting Company, Inc., et al. v. Davis, et al., 74 So. 2d 858; Tate v. Dr. Pepper Bottling Company, et al., 70 So. 2d 602; ██ █ all of which sustain the view that where a pre-existing disease or infirmity is aggravated, accelerated or contributed to and precipitated by the work in which the employee is engaged, the claim is compensable under the Workmen's Compensation Act upon the theory that in such event the injury or death occurred during the course of, and arising out of, the employment.

We do not mean by the foregoing summary of the facts and law of this case to say that the claim as to liability was not defended before the attorney-referee and the commission in good faith, since the employer and its insurance carrier may have had as much right to rely upon the opinions of the two physicians consulted by them as did the claimants to rely upon the opinions of the two physicians who testified in their behalf. The conflicting views expressed by these medical witnesses clearly represent two opposing theories entertained by members of the medical profession, who are said to be experts in this particular field, as to whether or not in the absence of any unusual or extraordinary exertion the work of the employee has any causal connection with an attack of coronary thrombosis. But we do em-

phasize the fact that there is little to be gained by an appeal from an adverse finding of the attorney-referee and of the commission where there is ample testimony to sustain either of the conflicting views testified to by the medical experts. When such is the case the question has already been repeatedly decided by this Court in the cases hereinabove set forth.

Under Section 13 (e) of the Mississippi Workmen's Compensation Act, the attorney-referee failed to assess the employer and its insurance carrier with the 10% penalty therein provided for in case of failure to pay any installment of compensation payable "without an award" within fourteen days after it becomes due, and also failed to assess them with a penalty not to exceed $100 under Section 28 (d), for the failure of the employer or insurance carrier to report to the commission the alleged injury within ten days after its fatal termination.

The commission assessed both of these penalties, and on appeal to the circuit court the commission was affirmed as to the penalty assessed under Section 13 (e) and reversed as to the penalty assessed under Section 28 (d) of the Act.

In view of the well-recognized rule that penal statutes should be strictly construed, this appeal presents to a minority of the Judges the troublesome question of whether or not this is a proper case for the assessment of penalties other than the 5% penalty provided for by Section 1971, Code of 1942, required in the event of an affirmance of a judgment for a sum of money on appeal here.

Section 13 (e) in reference to an installment of compensation "payable without an award" has not heretofore been interpreted to apply to cases where the right to compensation is being questioned or contested in good faith. However, five of the Judges, Hall, Lee, Kyle, Arrington and Ethridge, are of the opinion that this penalty

was properly assessed by the commission and by the circuit court. They were also of the opinion that the $100 penalty provided for under Section 28 (d) of the Act was properly assessed by the commission, and that the circuit court was in error in reversing the commission on such assessment, and that therefore the judgment of the commission should be reinstated in full. They state their reasons in a separate opinion rendered herewith as to why they think both penalties· should be assessed.

Those of us who are not so strongly impressed with the idea that the penalties should be assessed under all of the facts and circumstances of this case, do not care to register a dissent to the specially concurring opinion of Justice Ethridge in regard thereto.

The judgment of the attorney-referee, commission and the circuit court must therefore be affirmed on the question of liability, the judgment of the circuit court must be reversed to the extent that it disallowed the $100 penalty under Section 28 (d) of the Act, and affirmed wherein it approved the judgment of the commission in allowing a penalty under Section 13 (e) of the Act.

The record contains a written stipulation duly signed by the appellees, wherein it is agreed that their attorneys may receive 25% of the compensation award in consideration of their services before the referee and commission, and an additional $500 on appeal to the circuit court and the further sum of $500 on appeal to the Supreme Court. We are asked to approve and allow these fees as stipulated for. The court is committed to the policy of not allowing a total compensation for attorneys' fees in a workmen's compensation case in excess of 33-1/3% of the award. Therefore, the fees stipulated for as aforesaid, or a total fee for all legal services rendered not to exceed 33-1/3%, whichever is the lesser, is hereby approved and allowed.

The motion of the appellees for an allowance of 5% as damages and 6% interest under Section 1971,

Code of 1942, must of necessity be sustained, and the judgment should be written accordingly.

Affirmed in part, reversed in part and remanded.

All justices concur, except *Holmes,* J., who took no part.

ETHRIDGE, J., specially concurring:

I am in full accord with the decision as set forth in the controlling opinion. However, the ruling affirming the commission's assessment upon appellants of two penalties under the Workmen's Compensation Act is of sufficient importance to warrant a more detailed discussion.

*First.* One penalty is under Section 28 of the original Act, Miss. Laws 1948, Chap. 354, which is now Code of 1942, Sec. 6998-34: ''(a) Within ten days after the fatal termination of any injury, the employer shall make a brief report of such occurrence to the commission by telegraph or by letter. . . .

''(b) Additional reports in respect of such injury and of the condition of such employee shall be sent by the employer to the commission at such times and in such manner as the commission may prescribe.

''(c) The mailing to the commission of any such report in a stamped envelope within the time prescribed, shall be a compliance with this section.

''(d) Whenever an employer fails or refuses to file any report required of him by this section, the commission may in its discretion add a penalty not to exceed one hundred dollars ($100.00) to all or any awards which may be made as a result of the unreported injury.''

Subsection (d) is based upon a failure of the employer to file a report of an injury on the job. It is in the nature of an information report, advising the commission that there has been an on-the-job injury which terminated in death. It must be made within ten days after the event. The statutory requirement is manda-

tory, and is based upon a sound legislative policy. Irrespective of whether or not the injury is compensable, still if it occurred on the job the commission should be advised of it, so that the commission and the dependents of deceased would have an opportunity to consider whether a compensable claim existed. Sec. 6998-34 (d) states that if an employer fails to file this mandatory report, the commission in its discretion may add to any award a penalty not to exceed $100.

Appellants wholly disregarded this statute. Chester fell out on the job, and his foreman and fellowworkmen carried him to the hospital, where he died within half an hour. This occurred on December 9, 1953. Appellants filed no report whatsoever of this on-the-job death, until after Chester's widow, the appellee, filed with the commission on March 24, 1954, a claim for compensation benefits. Thereafter, on April 8, 1954, appellants filed a notice that they intended to controvert the claim. It was some four months after Chester's death before appellants ever gave the commission any notice that Chester had died on the job. Appellants had actual notice under Code Sec. 6998-18 of his death on the day it occurred. So appellants undisputedly did not comply with the mandatory requirement of the act. Accordingly the commission in its order found that appellants did not comply with Sec. 6998-34 and did not report Chester's death as required by that statute. Therefore the commission assessed a penalty of $100 against appellants "for their failure to report this occurrence to the commission as provided for by statute."

Procedural Rule 1 of the Mississippi Workmen's Compensation Commission correctly interprets the mandatory nature of the requirement in Sec. 6998-34 concerning the filing of a report of injury within ten days. It states: "REPORTING INJURIES OR DEATHS. Employers shall report all on-the-job deaths of their employees to the Mississippi Workmen's Com-

pensation Commission within ten (10) days, as provided for in Section 28 of the Mississippi Workmen's Compensation Act and on forms prescribed by the Commission. . . . .

"As required by Section 27 of the Act, it will be the responsibility of the employer to keep a record of all injuries, regardless of their nature, which record will be available to the Commission upon request."

Appellee asked for the penalties under this statute and Sec. 6998-19 (e) before the attorney-referee, but his order made no reference to them. Appellee cross-appealed to the commission on this point, and it allowed the penalties. Prior to this time there had been a lengthy trial before the attorney-referee, an order of the attorney-referee, a hearing before the commission, and the commission's order of August 10, 1954. The trial before the attorney-referee was on April 26, 1954, about three and one-half months before the date of the commission's order. After the commission had awarded the penalties, appellants filed a motion to reconsider them. The motion asserted that shortly after Chester's death appellants had made a full investigation of the facts surrounding his death, which indicated that it occurred "as a result of no trauma"; and that therefore appellants "assumed" that the death was not compensable. The motion asserted that the question of notice was discussed with a member of the commission, and appellants were advised that it was not necessary to file with the commission a written notice of the death. Hence movants claimed that they were acting in good faith. This motion came on for hearing before the commission on September 3, 1954. The commission denied the motion because it came too late, and because in the hearing before the attorney-referee appellants' attorney declined to show what the investigation revealed.

Appellants then took a bill of exceptions, which was signed by the chairman of the commission. This was

directed to the commission's dismissal of appellants' motion to reconsider the penalties, and refusal to consider any testimony offered by appellants on this question. The bill of exceptions states that Dale McKibben, attorney and agent for appellants, investigated Chester's death two days after it occurred, that it was his opinion that Chester died from natural causes, and appellants concluded that the claim was not compensable. So appellants made no report. But Sec. 3998-34 (a) is mandatory. It does not delegate to the employer or the insurance carrier the discretion of determining whether a report of injury should be made.

The other statement in the bill of exceptions is as follows: "That on or about December 16, 1953, the said Dale H. McKibben went to the office of the Workmen's Compensation Commission in Jackson, Mississippi for the purpose of ascertaining whether or not it was necessary to file a report with the commission pertaining to Chester's death; that the said McKibben talked with one of the commissioners regarding the matter and secured copies of all rules and regulations and discussed same with said commissioner and from said conversation, it was the understanding of the said McKibben that since the provision for filing with the commission for record purposes only had been eliminated by commission rules, the present procedure when an event under investigation did not appear to be an accident of an event arising out of and in the course of the employment, the procedure was presently to file nothing."

 It is noted that this varies from the allegations in appellants' motion to the commission to reconsider penalties. The bill of exceptions simply says that McKibben "talked with one of the commissioners . . . and from said conversation, it was the understanding of the said McKibben that since the provision for filing with the commission for record purposes only had been eliminated by commission rules," no report was necessary

where investigation indicated no coverage. Administration of the mandatory provisions of the statute cannot be made dependent upon an ''understanding'' from informal conferences with representatives of the commission. Nor does the bill of exceptions reflect that a member of the commission had given appellants a formal ruling that no report was necessary. So the bill of exceptions was wholly insufficient to warrant a reconsideration of the penalty imposed under Sec. 6998-34.

 Moreover, since appellants had failed to raise these questions at a time prior to the commission's final order, the commission in its sound discretion was warranted in denying the motion to reopen the case as to penalties at that late date.

*Second.* The other penalty imposed by the commission's order of August 10, 1954, arises under Code Sec. 6998-19 (e), which was Sec. 13 (e) of the original Act: ''If any installment of compensation payable without an award is not paid within fourteen (14) days after it becomes due, as provided in subdivision (b) of this section, there shall be added to such unpaid installment an amount equal to ten per centum (10%) thereof, which shall be paid at the same time as, but in addition to, such installment, unless notice is filed under subdivision (d) of this section, or unless such nonpayment is excused by the commission after a showing by the employer that owing to conditions over which he had no control such installment could not be paid within the period prescribed for the payment.''

 It is undisputed that appellants failed to pay the compensation owed appellee within 14 days after it became due. Compensation under the act is based primarily upon a system of voluntary payments. Sec. 6998-19 (a) states that compensation shall be paid promptly and ''directly to the person entitled thereto, without an award, except where liability to pay compensation is controverted by the employer.'' The employer can

controvert the right to compensation by complying with subsection (d) of Sec. 6998-19. He would file with the commission "on or before the fourteenth day after he has knowledge of the alleged injury or death, a notice . . . stating that the right to compensation is controverted. . ." Hence appellants had the right not to begin payments of compensation within fourteen days after Chester's death, provided they filed with the commission a notice that they intended to controvert such right to compensation. Appellants admit that prior to the end of the fourteen-day period they had made a full investigation of the claim. They then had full knowledge of the facts from their point of view, and had determined not to pay. So it would have been easy for appellants to have filed the notice to controvert. Yet they failed to do so. The requirements of Sec. 6998-19 (a) and (e) are mandatory, unless there is a showing that it was not possible to make the payments within the stated time. The commission's order expressly adjudicated that the defendants were liable for the penalty of ten per cent of all unpaid installments.

This provision of the act was recently considered in Cumbest Manufacturing Company v. Pinkney, 83 So. 2d 74 (Miss. 1955), except that it dealt with a discontinuance rather than a beginning of payments. Pinkney was injured while working for appellant, and for several months payments of compensation were made to him. The adjuster for the insurance carrier saw appellee in his garden, and concluded that he was no longer disabled, so he discontinued the payment of compensation to appellee without notice to or authority from the commission, contrary to the requirements of Sec. 6998-19 (d) and (e). This Court affirmed the commission's assessment of the ten per cent penalty. After quoting these two subsections, it was said: "In our opinion this action of the adjuster was wholly unwarranted and wholly unjustified and clearly subjects the appellants to liability

for the ten per cent penalty provided by statute. In fact, there will, in our opinion, be few cases presenting stronger grounds for the application of the penalty than the case now before us. The statute was designed to deter the unwarranted and unjustified discontinuance of compensation payments upon which the injured worker depends for his support and that of his family. It would be a threat to the security of compensation payments to permit the adjuster for the insurance carrier to become the sole arbiter of their continuance or discontinuance. The statute is a salutary one and should be applied in cases where the facts warrant it as they do in the case now before us. We are accordingly of the opinion that the circuit court was in error in denying the ten per cent penalty.''

██ ██ These statements apply with equal force to the instant case. Hence the commission should be and is affirmed in its assessment against appellants of the ten per cent penalty under Sec. 6998-19 (e) and of that under Sec. 6998-34 (d).

*Hall, Lee, Kyle* and *Arrington*, JJ., join in this specially concurring opinion.

### ON MOTION TO CORRECT JUDGMENT

Gillespie, J.

Appellants filed a motion to correct judgment in order to make certain the installments to which the ten percent penalty applies.

██ ██ Where the employer fails to controvert the right to compensation within fourteen days from the date of knowledge of injury or death, as provided in Code Section 6998-19 (d), and later raises a defense or defenses when claim is subsequently filed, as authorized by the same sub-section, and the Commission makes an award of compensation, as it did in this case on August 10, 1954, the ten percent penalty under Code Section 6998-19 (e) applies to those installments of com-

152

pensation becoming due between the due date of the first installment (in this case fourteen days from the date of death) and the date the Commission makes the award of compensation. After an award has been made in such case, any penalty for failure to make timely payments of installments becoming due thereafter would be governed by Code Section 6998-19 (f).

We are not here concerned with the cessation of payments due without an award as was the case in Cumbest Manufacturing Company v. Pinkney, 83 So. 2d 74.

Motion to correct judgment sustained.

All justices concur, except *Roberds*, J., who dissents in part.

## ON MOTION TO CORRECT JUDGMENT

ROBERDS, P. J., dissenting in part.

Section 6998-19 (d) and (e), Miss. Code 1942, 5-A Recompiled, is indeed a statutory novelty in that it imposes a duty upon a defendant to initiate the question of his own liability, and upon failure to do so lays a penalty upon him of ten percent. Such a penal statute surely should be construed strictly in its application. The majority opinion holds that this penalty should be applied to all installments up to the time of the award by the Commission. The penalty is directed at the failure of the employer to give notice he will controvert the right to compensation. Logically, the penalty should not continue past the time the employer makes known that he is controverting the claim. That would meet the object of the statute. To impose a ten percent penalty on all amounts that may be found owing to the time the final award is made is not only burdensome in the extreme, but puts a premium on all delays in the hearing of the matter. The vision of collecting ten percent on the final award will naturally induce many claimants to find compelling reasons for delaying the final award in these compensation cases.